# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ALPHONSO INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) C.A. No. 18-1205-CFC |
| v. | ) |
| | ) **JURY TRIAL DEMANDED** |
| FREE STREAM MEDIA CORP | ) |
| d/b/a Samba TV, | ) |
| | ) |
| Defendant. | ) |

## FIRST AMENDED COMPLAINT FOR PATENT INFRINGEMENT AND VIOLATION OF THE LANHAM ACT

Plaintiff Alphonso Inc. ("Alphonso") files this First Amended Complaint for Patent Infringement and Violation of the Lanham Act against Defendant Free Stream Media Corp. d/b/a Samba TV ("Samba") and alleges as follows:

## NATURE OF THE ACTION

1. This is an action by Alphonso against Samba for infringement of U.S. Patent Nos. 9,838,755 (the "'755 patent") and 8,677,384 (the "'384 patent") and for making false and/or misleading representations in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

## THE PARTIES

2. Alphonso is incorporated under the laws of Delaware, with its principal place of business at 321 Castro Street, Mountain View, California 94041.

3. On information and belief, Samba is incorporated under the laws of Delaware, with its principal place of business at 123 Townsend Street, 5th Floor, San Francisco, California 94107.

## JURISDICTION AND VENUE

4. This is an action for patent infringement arising under the patent laws of the United States of America, Title 35, United States Code, and for violations of the Lanham Act, Title 15, United States Code.

5. This Court has subject-matter jurisdiction over Alphonso's claims under 28 U.S.C. §§ 1331 and 1338(a) and 15 U.S.C. §§ 1116 and 1125.

6. This Court has personal jurisdiction over Samba. On information and belief, Samba is a corporation organized under the laws of Delaware and therefore subject to this Court's personal jurisdiction because it resides in this judicial district.

7. This Court also has personal jurisdiction over Samba because, on information and belief, it has maintained continuous and systematic contacts with the State of Delaware, including but not limited to, purposefully availing itself of this forum by, among other things, making, marketing, shipping, using, offering to sell or selling, or causing others to use, offer to sell, or sell infringing products in the State of Delaware, and deriving substantial revenue from such activities.

8. Venue is proper in this judicial district under 28 U.S.C. § 1400(b). On information and belief, Samba is a corporation organized under the laws of Delaware and therefore resides in the State of Delaware for the purposes of determining venue.

## THE PATENTS-IN-SUIT

9. Alphonso is the owner of the entire right, title, and interest in and to the '755 patent, entitled "System and Method for Determining TV Tune-in Attribution," issued by the United States Patent and Trademark Office on December 5, 2017. A copy of the '755 patent is attached hereto as Exhibit A.

10. Alphonso is the owner of the entire right, title, and interest in and to the '384 patent, entitled "Methods and Systems for Network Based Capture of Television Viewer Generated Clickstreams," issued by the United States Patent and Trademark Office on March 18, 2014. A copy of the '384 patent is attached hereto as Exhibit B.

## SAMBA'S FALSE AND/OR MISLEADING REPRESENTATIONS RELATING TO TELEVISION PARTNERSHIPS

11. Alphonso has an exclusive agreement with HiSense USA Corporation ("HiSense") to provide Automated Content Recognition ("ACR") services in connection with the smart televisions that HiSense sells to consumers.

12. In or around August 2015, HiSense announced its acquisition of Sharp's TV business for the North and South American markets, including the rights to use the "Sharp" brand name in those markets. HiSense began selling Sharp TVs in or around January 2016.

13. On information and belief, since January 2016, by way of its exclusive agreement with HiSense, Alphonso is the exclusive provider of ACR services for Sharp TVs in North and South America.

14. After January 2016, Samba misrepresented to customers, potential customers, and the public that it has a contractual or business relationship with Sharp and that Samba software is being integrated into Sharp TVs.

15. On information and belief, since at least January 2016, Samba has not had any such relationship with Sharp nor is Samba software being integrated into Sharp TVs.

16. As of the filing of this Complaint, Samba continues to display Sharp's logo on its website as one of Samba's alleged premier partners. *See* https://platform.samba.tv/technology/.

17. Samba's misrepresentations relating to Sharp have been further disseminated to the public by news articles relying on Samba's misrepresentations.

18. For example, on July 5, 2018, the New York Times reported in an article, available at https://www.nytimes.com/2018/07/05/business/media/tv-viewer-tracking.html, that "Samba TV has struck deals with roughly a dozen TV brands — including Sony, Sharp, TCL and Philips — to place its software on certain sets." For this statement, the New York Times article links directly to Samba's website at https://platform.samba.tv/technology/.

19. Despite being previously questioned by the New York Times, Samba has made no attempts to fix this incorrect statement in the article. Indeed, with respect to another correction in the article related to Netflix, Samba has refused to provide any response to the New York Times. The article now provides the following correction:

> **Correction:** July 9, 2018
> An earlier version of this article, relying on marketing materials from Samba TV and comments by its chief executive, said Samba TV could track programs viewers were watching on Netflix. After publication, Netflix said it had agreements with smart TV manufacturers that precluded third-party tracking like that done by Samba TV. Samba TV did not respond to repeated requests for comment about Netflix.

20. In addition to the New York Times article, a number of other recent reports and articles have similarly asserted that Samba has a contractual or business relationship with Sharp or that Samba software is integrated into Sharp TVs. On information and belief, the statements in those articles and reports were based on false or misleading representations made by Samba.

21. In addition to Sharp, Samba has made other false and misleading representations to customers, potential customers, and the public about the TV manufacturers with which it has worked or partnered. For example, on February 7, 2017, Samba CEO Aswhin Navin published a LinkedIn blog post claiming that Samba "work[s] with 10 of the top 13 brands in the TV manufacturing business." *See* https://www.linkedin.com/pulse/ftcs-vizio-decision-signals-new-era-data-privacy-connected-navin/.

22. Furthermore, in addition to Sharp, Samba identifies on its website other TV manufacturers that it purportedly partners with. *See* https://platform.samba.tv/technology/. Samba also asserts that its "Hotlist" TV application is available on a variety of smart TVs, including on Sharp TVs. *See* https://samba.tv/tv-apps/hotlist/.

23. On information and belief, these statements regarding Samba's relationship to or with TV manufacturers are false and misleading misrepresentations.

### SAMBA'S FALSE AND/OR MISLEADING REPRESENTATIONS RELATING TO ITS DEVICE FOOTPRINT

24. In an effort to promote its business to customers, potential customers, and the public, Samba often touts the number of electronic devices from which it is able to collect viewer information, known in the industry as a "device footprint." In so doing, Samba, on information belief, has made false and misleading representations, including in online posts and live interviews, regarding the actual size and reach of its device footprint.

25. For example, in an interview published on September 30, 2016, Samba CEO Ashwin Navin stated that Samba has software "resident in about 180 million devices, and the 180 million consist of smart TVs, set top boxes, phones, tablets, and PCs where we're observing video consumption, ad exposure, on all of these devices to more accurately describe, you know, what the reach frequency and the effectiveness is of the media that's running on these devices." *See* https://www.beet.tv/2016/09/16dmexsambanavin.html.

26. On February 8, 2017, Samba published a blog post on its website in which it represented that "we generate datasets from over 200 million devices." *See* https://samba.tv/ftcs-vizio-decision-signals-new-era-data-privacy-era-connected-devices/.

27. On June 19, 2017, Samba issued a press release announcing that it had raised $30 million in growth capital. *See* https://samba.tv/samba-tv-raises-30-million-growth-capital/. In

that release, Samba stated: "Samba TV's proprietary household device map totals more than 66 million devices for 1:1 mapping and 1B+ digital devices for programmatic reach including smart TVs, set top boxes, smartphones and other connected devices."

28. On April 12, 2018, in a LinkedIn blog post, Samba CEO Ashwin Navin asserted that "Samba TV analyzes viewership data through privacy-compliant visual content recognition in more than 40 countries worldwide." https://www.linkedin.com/pulse/liberty-global-invests-75m-samba-tv-ashwin-navin/.

29. On information and belief, these and other statements made by Samba are false and misleading representations of the number of devices in, and the number of countries covered by, Samba's actual device footprint.

### SAMBA'S FALSE AND/OR MISLEADING REPRESENTATIONS REGARDING FTC APPROVAL

30. In an effort to promote its business to customers, potential customers, and the public, on information and belief, Samba represents that its products and services are approved by the Federal Trade Commission ("FTC"). Samba's representations are false and misleading.

31. As one example, in an article published on August 28, 2017, Millward Brown states that "Samba TV's 1st party, owned and controlled audience data is 100 percent privacy compliant and FTC-approved with a 2-step opt-in process and easily accessible opt-out functionality." *See* http://www.millwardbrown.com/global-navigation/blogs/post/mb-blog/2017/08/28/new-more-accurate-tv-ad-effectiveness-measurement. On information and belief, this statement by Millward Brown is based on Samba's false and misleading representation that the FTC has approved its products and service.

32. In the July 5, 2018 New York Times article cited above, Samba spokesman Bill Daddi attempted to build up Samba's relationship with the FTC. According to the article, "Mr.

6

Daddi said the trade commission had held up Samba TV as 'an exemplary model of data privacy and opt-in policies,' pointing to its participation in a smart TV workshop the agency held in late 2016." *See* https://www.nytimes.com/2018/07/05/business/media/tv-viewer-tracking.html.  In the same article, however, an FTC spokesperson made clear that "'an invitation to participate in an F.T.C. event does not convey an endorsement of that company or organization'" and that "the agency does not 'endorse or bless companies' practices.'"

33. On information and belief, Samba's representations that the FTC approves or endorses Samba's products and services are false and misleading.

### COUNT I
### (Infringement of the '755 patent)

34. Alphonso repeats and realleges the allegations in paragraphs 1–33 as if fully set forth herein.

35. The '755 patent is valid and enforceable.

36. On information and belief, Samba makes, uses, sells, offers to sell, and/or imports a collection of products and services (the "Samba Platform"), including but not limited to the Spotlight app, Interactive TV technology, the Hotlist Smart TV app, Audience Discovery, Sync and Retarget, Connected TV, Verified Tune-in Rate, and additional products and/or services related to advertising and TV viewership, and the back-end hardware and software necessary for the operation of those products.

37. In violation of 35 U.S.C. § 271(a), Samba has been and is directly infringing the '755 patent, either literally or under the doctrine of equivalents, by making, using, selling, offering to sell, and/or importing into the United States, without license or authority, the Samba Platform or components thereof, covered by one or more claims of the '755 patent, including, without limitation, claim 1.

38. The Samba Platform practices the inventions claimed in the '755 patent, including by collecting and storing information describing the audio-visual content viewed on monitored user devices, collecting and storing information describing the digital advertisements viewed by users associated with monitored devices, and calculating a "lift metric" describing the effectiveness of the digital advertisements.  *See, e.g.*, Samba TV, March Madness Tune-in Attribution Research, April 2016, presented at CIMM 2016, April 13, 2016, *available at* http://cimm-us.org/wp-content/uploads/2012/07/Real-Time-TV-Ratings-from-SmartTVs_Ashwin-Navin_Samba-TV.pdf (last visited July 26, 2018); *see also* Samba TV: Real Time TV Ratings from SmartTVs, *available at* https://www.youtube.com/watch?v=4rZezcz8o2A.

39. Alphonso incorporates by reference the preliminary claim chart attached hereto as Exhibit C, which is based on publicly available information obtained after a reasonable inquiry.

40. On information and belief, Samba indirectly infringes the '755 patent by inducing infringement by others, such as advertising agencies, advertising partners, advertisers, and/or other third parties in the United States.  Samba has actual notice of the '755 patent no later than the date of the filing and service of this Complaint.

41. On information and belief, Samba's affirmative acts of making, selling, and offering to sell its services and/or products or components thereof cause the Samba Platform to be used.  On information and belief, Samba further provides guidance and instruction to third parties to use the Samba Platform in their normal and customary way to infringe the '755 patent.

42. On information and belief, Samba specifically intends that advertisers, advertising agencies, advertising partners, and/or other third parties infringe the '755 patent.  On information and belief, Samba performs the acts that constitute induced infringement with knowledge of the

'755 patent and with knowledge or willful blindness that the induced acts would constitute infringement. On information and belief, Samba's acts constituting induced infringement are ongoing and continuing.

43. On information and belief, Samba indirectly infringes the '755 patent by contributing to the infringement by others, such as advertisers, advertising agencies, advertising partners, and/or other third parties in the United States. On information and belief, direct infringement is the result of activities performed by Samba, advertisers, advertising agencies, advertising partners, consumers, and/or other third parties making or using the Samba Platform for its intended use. Samba has actual notice of the '755 patent no later than the date of the filing and service of this Complaint.

44. On information and belief, Samba's affirmative acts of making, selling, and offering for sale the Samba Platform and causing the Samba Platform to be made and sold contribute to advertisers, advertising agencies, advertising partners, consumers, and/or other third parties making or using the Samba Platform in its normal and customary way to infringe the '755 patent. On information and belief, the Samba Platform is material to the claimed invention, has no substantial non-infringing uses, and is known by Samba to be especially made or especially adapted for use in the infringement of the '755 patent.

45. Samba's acts of infringement described above have caused damages to Alphonso. Alphonso is entitled to recover from Samba the damages sustained as a result of Samba's infringement of the '755 patent, and in no event less than a reasonable royalty.

46. Samba's acts of infringement have caused, and, unless restrained and enjoined, will continue to cause, irreparable injury and damage to Alphonso for which there is no adequate remedy at law.

47. Samba engages and continues to engage in direct competition with Alphonso using the infringing Samba Platform and has attempted and continues to attempt to substantially undercut Samba's pricing with copied technology and knowledge of Alphonso's intellectual property rights, including the '755 patent.

## COUNT II
### (Infringement of the '384 patent)

48. Alphonso repeats and realleges the allegations in paragraphs 1–47 as if fully set forth herein.

49. The '384 patent is valid and enforceable.

50. In violation of 35 U.S.C. § 271(a), Samba has been and is directly infringing the '384 patent, either literally or under the doctrine of equivalents, by making, using, selling, offering to sell, and/or importing into the United States, without license or authority, the Samba Platform or components thereof, covered by one or more claims of the '384 patent, including, without limitation, claim 1.

51. The Samba Platform practices the inventions claimed in the '384 patent, including by collecting user input information, creating and maintaining a demographic profile of users, requesting advertisements for insertion into advertising slots, and causing advertisements selected at least in part based on the user's demographic profile to be displayed. *See, e.g.*, Audience Discovery | Samba TV Audience Platform, *available at* https://platform.samba.tv/audiences/audience-discovery/; Connected TV Ads | Samba TV Audience Platform, *available at* https://platform.samba.tv/audiences/connected-tv-ads/; Programmatic TV Data | Samba TV Audience Platform, *available at* https://platform.samba.tv/audiences/programmatic-tv-data/.

52.     Alphonso incorporates by reference the preliminary claim chart attached hereto as Exhibit D, which is based on publicly available information obtained after a reasonable inquiry.

53.     On information and belief, Samba indirectly infringes the '384 patent by inducing infringement by others, such as advertising agencies, advertising partners, advertisers, and/or other third parties in the United States. Samba has actual notice of the '384 patent no later than the date of the filing and service of this Complaint.

54.     On information and belief, Samba's affirmative acts of making, selling, and offering to sell its services and/or products or components thereof cause the Samba Platform to be used. On information and belief, Samba further provides guidance and instruction to third parties to use the Samba Platform in their normal and customary way to infringe the '384 patent.

55.     On information and belief, Samba specifically intends that advertisers, advertising agencies, advertising partners, and/or other third parties infringe the '384 patent. On information and belief, Samba performs the acts that constitute induced infringement with knowledge of the '384 patent and with knowledge or willful blindness that the induced acts would constitute infringement. On information and belief, Samba's acts constituting induced infringement are ongoing and continuing.

56.     On information and belief, Samba indirectly infringes the '384 patent by contributing to the infringement by others, such as advertisers, advertising agencies, advertising partners, and/or other third parties in the United States. On information and belief, direct infringement is the result of activities performed by Samba, advertisers, advertising agencies, advertising partners, consumers, and/or other third parties making or using the Samba Platform for its intended use. Samba has actual notice of the '384 patent no later than the date of the filing and service of this Complaint.

57. On information and belief, Samba's affirmative acts of making, selling, and offering for sale the Samba Platform and causing the Samba Platform to be made and sold contribute to advertisers, advertising agencies, advertising partners, consumers, and/or other third parties making or using the Samba Platform in its normal and customary way to infringe the '384 patent. On information and belief, the Samba Platform is material to the claimed invention, has no substantial non-infringing uses, and is known by Samba to be especially made or especially adapted for use in the infringement of the '384 patent.

58. Samba's acts of infringement described above have caused damages to Alphonso. Alphonso is entitled to recover from Samba the damages sustained as a result of Samba's infringement of the '384 patent, and in no event less than a reasonable royalty.

59. Samba's acts of infringement have caused, and, unless restrained and enjoined, will continue to cause, irreparable injury and damage to Alphonso for which there is no adequate remedy at law.

60. Samba engages and continues to engage in direct competition with Alphonso using the infringing Samba Platform, and has attempted and continues to attempt to substantially undercut Samba's pricing with copied technology and knowledge of Alphonso's intellectual property rights, including the '384 patent.

## COUNT III
**(Violation of Section 43 of the Lanham Act)**

61. Alphonso repeats and realleges the allegations in paragraphs 1–60 as if fully set forth herein.

62. Samba's false and/or misleading representations identified above are likely to cause confusion as to the true scope of Samba's commercial activities, its device footprint, its

alleged affiliation with TV manufacturers (including Sharp brand TVs and/or HiSense), and members of the TV industry's and/or the FTC's approval of its products and services.

63. Samba's false and/or misleading representations violate Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

64. Samba has unfairly profited from its false and/or misleading representations.

65. Alphonso has been damaged by Samba's false and/or misleading representations.

66. Samba's acts are willful, and Alphonso is entitled to treble damages under 15 U.S.C. § 1117 and permanent injunctive relief under 15 U.S.C. § 1116.

67. This is an exceptional case, and Alphonso is eligible for an award of reasonable attorneys' fees under 15 U.S.C. § 1117. Samba's acts in violation of the Lanham Act have caused, and, unless restrained and enjoined, will continue to cause, irreparable injury and damage to Alphonso for which there is no adequate remedy at law.

## **PRAYER FOR RELIEF**

WHEREFORE, Alphonso respectfully requests that this Court enter judgment in its favor and grant the following relief against Samba:

A. Judgment that Samba infringed and continues to infringe the '755 patent;

B. Judgment that Samba infringed and continues to infringe the '384 patent;

C. Judgment that Samba's false or misleading representations alleged above violate Section 43(a) of the Lanham Act;

D. Award Alphonso damages in an amount adequate to compensate Alphonso for Samba's infringement of the '755 patent, and in no event less than a reasonable royalty;

E.      Award Alphonso damages in an amount adequate to compensate Alphonso for Samba's infringement of the '384 patent, and in no event less than a reasonable royalty;

F.      Award Alphonso all of Samba's profits pursuant to § 1117(a)(1) of the Lanham Act;

G.      Award Alphonso damages in an amount adequate to compensate Alphonso for Samba's false and/or misleading representations pursuant to § 1117(a)(2) of the Lanham Act;

H.      Award Alphonso pre-judgment and post-judgment interest to the fullest extent allowable by law;

I.      Treble Alphonso's damages caused by Samba's violations of the Lanham Act pursuant to 15 U.S.C. § 1117;

J.      Enter an order finding this to be an exceptional case and awarding Alphonso its reasonable attorneys' fees under 35 U.S.C. § 285 and/or 15 U.S.C. § 1117;

K.      Award Alphonso its costs;

L.      Enter a permanent injunction against Samba and its respective officers, directors, shareholders, agents, servants, employees, attorneys, all parent, subsidiary and affiliate corporations, their successors in interest and assignees, and all other entities and individuals acting in concert with or on behalf of Samba, including customers, from making, importing, using, offering for sale, and/or selling any product or service falling within the scope of any claims of the '755 patent or otherwise infringing or contributing to or inducing infringement of any claim of the '755 patent;

M.     Enter a permanent injunction against Samba and its respective officers, directors, shareholders, agents, servants, employees, attorneys, all parent, subsidiary and affiliate corporations, their successors in interest and assignees, and all other entities and individuals acting in concert with or on behalf of Samba, including customers, from making, importing, using, offering for sale, and/or selling any product or service falling within the scope of any claims of the '384 patent or otherwise infringing or contributing to or inducing infringement of any claim of the '384 patent;

N.     Enter a permanent injunction against Samba and its respective officers, directors, shareholders, agents, servants, employees, attorneys, all parent, subsidiary and affiliate corporations, their successors in interest and assignees, and all other entities and individuals acting in concert with or on behalf of Samba, from making false and/or misleading representations about its commercial activities or business relationship with Sharp and/or HiSense in violation of the Lanham Act;

O.     In the event this Court deems that Alphonso is not entitled to an injunction on its patent claims, award a compulsory ongoing royalty; and

P.     Award such other relief as the Court may deem appropriate and just under the circumstances.

## **JURY DEMAND**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Alphonso respectfully demands a jury trial on all issues and claims so triable.

|  |  |
|---|---|
|  | Respectfully submitted, |
|  | POTTER ANDERSON & CORROON LLP |
| OF COUNSEL: |  |
| Neel Chatterjee<br>Andrew Ong<br>GOODWIN PROCTER LLP<br>601 Marshall Street<br>Redwood City, CA 94063<br>Tel.: (650) 752-3100 | By: */s/ David E. Moore*<br>    David E. Moore (#3983)<br>    Bindu A. Palapura (#5370)<br>    Stephanie E. O'Byrne (#4446)<br>    Jennifer Penberthy Buckley (#6264)<br>    Hercules Plaza, 6th Floor<br>    1313 N. Market Street<br>    Wilmington, DE  19801<br>    Tel:  (302) 984-6000<br>    dmoore@potteranderson.com<br>    bpalapura@potteranderson.com<br>    sobyrne@potteranderson.com<br>    jbuckley@potteranderson.com |
| Andrea Scripa Els<br>GOODWIN PROCTER LLP<br>100 Northern Avenue<br>Boston, MA 02210<br>Tel.: (617) 570-1000 |  |
| Dated:  October 22, 2018<br>5971000 / 45294 | *Attorneys for Plaintiff Alphonso Inc.* |